IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANTOS ZEPEDA,

      Petitioner,           No. 2:11-cv-1757 KJM AC P

    vs.

SUZAN L. HUBBARD,

      Respondent.           FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se and in forma pauperis on his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the undersigned recommends that the petition be DENIED and that a certificate of appealability not issue.

        **BACKGROUND**

        On April 27, 2004, petitioner, a member of the Norteño street gang, shot Robert Gonzalez, Sr. ("Robert, Sr."), who associated with the rival Sureño gang, and Robert, Sr.'s son, Robert Gonzalez, Jr. ("Robert, Jr.").  Lod. Doc. No. 1 at 2.  Robert, Jr. died of his wounds, and Robert, Sr. was paralyzed from the waist down.  See People v. Zepeda, 167 Cal. App. 4th 25, 28 (2008).

On October 10, 2006, petitioner was convicted by jury of: (1) one count of murder, in violation of Penal Code § 187; (2) one count of attempted murder, in violation of Penal Code §§ 664 and 187; and (3) two counts of assault with a semiautomatic firearm, in violation of Penal Code § 245(b).  The jury also found true special allegations of: (1) personal use of a firearm, for all counts; (2) personal intentional discharge of a firearm causing death or great bodily injury, on the murder and attempted murder counts; (3) participation in a criminal street gang, on the assault counts; and (4) infliction of paralysis, on the attempted murder and one of the assault counts.  ECF No. 1 at 1; RT 977:19-983:18.  On December 27, 2006, petitioner was sentenced to a determinate term of 9 years, plus indeterminate terms totaling 75 years to life.  RT 1014:10-1018:20.

During trial, the trial court allowed the prosecution to introduce evidence of petitioner's association with the Norteño gang, including a CD called "Smebbin' Through the Town."  Lod. Doc. No. 1 at 6-7; 2 RT 531:11-536:21.  The prosecution's gang expert identified petitioner as the co-writer or co-producer for six of the twelve tracks on the CD.  2 RT 532:22-533:10.  The prosecution, over defense counsel's objection, played two of the songs for the jury.  2 RT 534:7-535:26.

The transcriptions of the lyrics do not appear in this court's version of the record, as the playback was not transcribed by the court reporter.  2 RT 535:25-26.  The state Court of Appeals, however, included the transcriptions in its opinion:

> The lyrics to the first track, track 2, were transcribed as follows: "(inaudible) Santos (inaudible) Representin not pretending with the 530. I carry a gat, smoke a sack, of the (inaudible.) I put Chico on the map, Fuck a bitch ass scrap (inaudible). Throw up the one four. Everyday we play this gangster role, kill a scrap we throw into a ditch. Fuck (inaudible) tricks while I talk to my click that's some serious shit. This is Chico Cali so sick with the sickness, semiautomatic sums up with quickness, so quiz this mother fucker, tuck it down. Better watch your back cause fuckin driven in town. Caught a scrap that was slippin, grab my glock (inaudible) not given a fuck. If your fuckin with me I straight fuck you myself (inaudible) Politics and gangster shit, Chevrolet, our philosophy fuckin' here we go, smoken on a pound, players from Chico,

smebbin through the town, politics and gangster shit, Chevrolet, our philosophy mother fuckers here we go, smokin' on a pound, players from Chico, smebbin through the town.

Portions of the second track, track 6, were transcribed as follows: "Player I be comin' through when I'm lookin' way too fresh, and I got a glock stuck in pants mother fucker so don't test. You know nothin' about these gangsters representin' Chico, we be mobbing through your town throwin' up the one four.... [¶] We play every day all day bitch in the struggle to get paid, and with no hesitation pullin' out the .12 gauge, I'm coming way too sick man, it sounds like I've been blessed, and when I'm on the block I look my best, I look too fresh, I'm a straight-up hustlin' pimp, mother fucker can't you see, what you got one fine-ass bitch trick, I've got like two or three, so you mother fuckers want to kill (inaudible) guard your house and load the gate mother fucker I'm about to retaliate, creepin' up in your window, puttin' a slug into your face, slippin' and sliding outta the scene so bad I don't catch a case, (inaudible) from almighty Chico, oh you know we don't have a play, when I realize hangin' ain't gonna happen just doing our gangster thing, I'm a hoggin' doggin' player bitch and I been that way so long, just take a hit of the dojo weed as you're listenin' to this song, take a 40 (inaudible) hit that shit until it's gone. [¶] ... [¶] (Inaudible) blunts and broken jugs (inaudible) lift it on my homie's back and (inaudible) Northside rider 'til I die, throwin' fists while (inaudible) tryin' hard to stay alive, well we survive this shit through the streets of Chico Cali, this Mr. Ish, with a bit of sickness, Northern Cali's where I be with my homies next to me, ready to ride and ready to see ready to make these scrapas bleed hit the spot and make it crack, with a fifth of the cognac, 530 and we go blow, with my .44 I'll let 'em know, it's northern Cali we'll (inaudible) so we come up. Rollin' hard I give a fuck, I'm runnin' up flamed up, 'cause I'm feeling luck, it ain't no game and my homies bring pain through the thunder and the rain, don't blame me I be outta the double V like a G I stay high, northside is how I ride and that's how it's gonna be, this is VCN write it N–O–R–T–E. [¶] ... [¶] Chico Chapmantown (Inaudible) hosin' up off the strip, we (inaudible) and damn sure we (inaudible) Norteños collide we ride, pullin' the homicide, we be comin' through your town, like we livin' so fresh, you old bitch ass scrap better shove up your vest, (inaudible) puttin' to rest, lookin' at my barrel with your very last breath and that it was kept, a 40 and a blunt with a Hennessy fifth, mobbing through the town, pullin' that gangster shit puttin' it down for that Norte click they say only the strong survive but that's only just a lie, the biggest mother fucker caught steel between his eyes, now he's lying dead, checked out, no (inaudible) nine millimeter (inaudible) when I creep and you know is sayin' straight runnin' the gang who is the black (inaudible) the scrap's name still runnin' the same."

1 | <u>People v. Zepeda</u>, 167 Cal. App. 4th at 33-34 (footnotes omitted).

2 |       Without objection, the trial court instructed the jury on reasonable doubt using

3 | CALCRIM No. 220:

> A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.
>
> Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

3 RT 793:23-794:5; 829:14-830:26; 845:7-23.

      On September 25, 2008, the Third District Court of Appeal affirmed the conviction and sentence in a published opinion.  <u>See</u> <u>People v. Zepeda</u>, 167 Cal. App. 4th 25 (2008), ECF No. 18-1.  Petitioner then sought review in the state Supreme Court, which was denied on December 17, 2008.  Lod. Doc. 4.

      Petitioner filed the instant federal petition on June 30, 2011.  ECF No. 1. Respondent filed her answer on December 29, 2013.  ECF No. 18.  Petitioner filed his traverse on February 23, 2012.  ECF No. 22.

**CLAIMS FOR RELIEF**

      Petition seeks relief on the following grounds:

      (1) The trial court violated petitioner's due process rights under the Fourteenth Amendment when it instructed the jury on "reasonable doubt" using CALCRIM No. 220, because this instruction "fails to convey a subjective certitude of the truth of the charge"; and

1    (2) The trial court violated petitioner's due process rights under the Fourteenth

2 Amendment when it allowed the prosecution to play a CD "containing irrelevant and highly

3 prejudicial gangster rap lyrics composed in part by petitioner."

4 Doc. No. 1 at 7, 9.

5         **PRELIMINARY ISSUES**

6      *Timeliness*

7    In her answer, respondent affirmatively alleges that the current petition is

8 untimely.  ECF No. 18 at 2.  The court had previously issued findings and recommendations that

9 the petition be dismissed as untimely (ECF No. 7), which the court then vacated in response to

10 the petitioner's objections articulating an equitable tolling defense to the statute of limitations

11 (ECF Nos. 8, 9).

12    In her answer, respondent asks that the court address the merits of the case before

13 reaching the timeliness issue.  See ECF No. 18 at 2, n.2.  Petitioner does not object to the court

14 ruling on the merits of his petition before deciding the timeliness issue; however, if the court

15 should decide to determine timeliness, petitioner asks that the court address this issue first, order

16 an evidentiary hearing, and appoint counsel.  See ECF No. 22 at 2.

17    The one-year statute of limitations for federal habeas petitions is not

18 jurisdictional, and is subject to equitable tolling.  Holland v. Florida, 130 S.Ct. 2549, 2560

19 (2010).  A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing

20 his rights diligently, and (2) that some extraordinary circumstance stood in his way and

21 prevented timely filing.  Id. (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In Holland,

22 for example, the Supreme Court noted that an attorney's failures to file a timely federal petition,

23 to inform Mr. Holland about the "crucial fact" that the state court had decided his appeal, or to

24 communicate with Mr. Holland over a period of years despite Mr. Holland's repeated pleas for a

25 response, "seriously prejudiced a client who thereby lost what was likely his single opportunity

26 for federal habeas review. . . ."  130 S.Ct. at 2564-65.

1        District courts retain the discretion to determine a petition on its merits, bypassing

2   an asserted procedural defense, where the underlying claims are "clearly not meritorious."  See

3   Lambrix v. Singletary, 520 U.S. 518, 525 (1997); see also Day v. McDonough, 547 U.S. 198,

4   208-09 (2006) (district courts can exercise discretion in each case to decide whether the

5   administration of justice is better served by dismissing the case on statute of limitations grounds

6   or by reaching the merits of the petition);  Granberry v. Greer, 481 U.S. 129, 135 (1987)

7   (discussing ability of district court to bypass exhaustion determination where the petitioner does

8   not raise a colorable federal claim).

9        Adjudication of timeliness in this case would require fact finding regarding

10  petitioner's diligence and the alleged misconduct of his former counsel.  Because the claims are

11  without merit for the reasons explained below, the court should exercise its discretion to bypass

12  the timeliness question and rule on the merits of the petition.

13          *Exhaustion*

14        In her answer, respondent alleges that petitioner must prove exhaustion.  A review

15  of the decision of the Court of Appeal, as well as the petition for review filed with the California

16  Supreme Court, reflects that petitioner raised with those courts the two issues which are the

17  subject of this petition.  Petitioner has accordingly exhausted his claims as required by 28 U.S.C.

18  § 2254(b)(1).[1]

19          **MERITS**

20          *Standards Governing The Availability of Habeas Relief*

21        28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

22  Act of 1996 ("AEDPA"), provides in relevant part as follows:

23          (d) An application for a writ of habeas corpus on behalf of a person
            in custody pursuant to the judgment of a state court shall not be

24

25        [1]   Even where claims are unexhausted, the court may deny a petition on the merits.  28
     U.S.C. § 2254(b)(2).  Because petitioner's claims lack merit, the court would proceed directly to
26   the merits even if there were a question regarding exhaustion.

1    granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the
2    claim –

3        (1) resulted in a decision that was contrary to, or involved
         an unreasonable application of, clearly established Federal
4        law, as determined by the Supreme Court of the United
         States; or
5        (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented
6        in the State court proceeding.

7        Section 2254(d) constitutes a "constraint on the power of a federal habeas court to

8    grant a state prisoner's application for a writ of habeas corpus." (Terry) Williams v. Taylor, 529

9    U.S. 362, 412 (2000).  It does not, however, "imply abandonment or abdication of judicial

10   review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  If

11   either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo

12   finding of constitutional error.  See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

13       The statute applies whenever the state court has denied a federal claim on its

14   merits, whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct.

15   770, 785 (2011).  State court rejection of a federal claim will be presumed to have been on the

16   merits absent any indication or state-law procedural principles to the contrary.  Id. at 784-785

17   (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it

18   is unclear whether a decision appearing to rest on federal grounds was decided on another

19   basis)).  "The presumption may be overcome when there is reason to think some other

20   explanation for the state court's decision is more likely." Id. at 785.

21       The phrase "clearly established Federal law" in § 2254(d)(1) refers to the

22   "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer

23   v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal

24   principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th

25   Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court

26   precedent may constitute "clearly established Federal law," but circuit law has persuasive value

7

1  regarding what law is "clearly established" and what constitutes "unreasonable application" of

2  that law.  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360

3  F.3d 1044, 1057 (9th Cir. 2004).

4          Section 2254(d)(1) applies to state court adjudications based on purely legal

5  rulings and mixed questions of law and fact.  Davis v. Woodford, 333 F.3d 982, 990 (9th Cir.

6  2003).  The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on

7  relief.  Williams, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of

8  (d)(1) must be given independent effect, and create two categories of cases in which habeas

9  relief remains available).  A state court decision is "contrary to" clearly established federal law if

10  the decision "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams,

11  529 U.S. at 405.  A state court decision "unreasonably applies" federal law "if the state court

12  identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the

13  facts of the particular state prisoner's case."  Williams, 529 U.S. at 407-08.  It is not enough that

14  the state court was incorrect in the view of the federal habeas court; the state court decision must

15  be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

16          Where the state court's adjudication is set forth in a reasoned opinion,

17  §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis."

18  Frantz, 533 F.3d at 738 (emphasis in original).  A different rule applies where the state court

19  rejects claims summarily, without a reasoned opinion.  See Richter, 131 S. Ct. at 786.  Evidence

20  presented for the first time in federal court is not pertinent to the § 2254(d)(1) analysis.  Cullen v.

21  Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

22  reasonably applied clearly established federal law to the facts before it.  Id.

23          Relief is also available under AEDPA where the state court predicated its

24  adjudication of a claim on an unreasonable factual determination.  § 2254(d)(2); Miller-El v.

25  Dretke, 545 U.S. 231, 240 (2005).  This inquiry is limited to the evidencethat was before the

26  state court.  Id.  An unreasonable determination of facts exists where, among other

1   circumstances, the state court made its findings according to a flawed process -- for example,

2   under an incorrect legal standard, or where necessary findings were not made at all, or where the

3   state court failed to consider and weigh relevant evidence that was properly presented to it.  See

4   Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  A

5   state court factual conclusion can also be unreasonable where it is not fairly supported by the

6   evidence presented in the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528 (state court's

7   "clear factual error" regarding contents of social service records constitutes unreasonable

8   determination of fact); Bradley v. Duncan, 315 F.3d 1091, 1096-98 (9th Cir. 2002)  (state court

9   unreasonably found that evidence of police entrapment was insufficient to require an entrapment

10  instruction), cert. denied, 540 U.S. 963 (2003).

11                      *Claim One: Jury Instructions*

12                      Petitioner argues that the trial court's instruction on reasonable doubt violated his

13  Fourteenth Amendment due process rights because the given instruction "fails to convey a

14  subjective certitude of the truth of the charge."  ECF No. 1 at 7.  Petitioner claims that the

15  instruction "obscures the requirement that proof beyond a reasonable doubt involves not merely

16  an objective assessment of the probabilities inherent in the evidence but a 'subjective certitude'

17  of the truth of the charge. . . ."  Id. at 8.

18                      The California Court of Appeal considered petitioner's claim that CALCRIM No.

19  220 violated the Fourteenth Amendment, and found that the trial court made no error in giving

20  this instruction:

21              CALCRIM No. 220 conveys to the jury the concept of reasonable
                doubt without being ambiguous or obscuring the concept's scope.
22              It defines proof beyond a reasonable doubt as proof that leaves the
                juror with an abiding conviction, a description that legally and
23              linguistically means a deeply felt conviction.  By referencing an
                "abiding conviction," the instruction "correctly states the
24              government's burden of proof."  (*Victor v. Nebraska*, *supra*, 511
                U.S. [1], at pp. 14-15. . . .)  The constitution requires nothing more.

25

26

1    <u>Zepeda</u>, 167 Cal. App. 4th at 31-32, ECF No. 18-1 at 8.[2]

2         This court's review under 28 U.S.C. § 2254(d) focuses on the last reasoned state

3    court decision.  <u>Collins v. Runnels</u>, 603 F.3d 1127, 1130 (9th Cir.), <u>cert. denied</u>, 131 S.Ct. 243

4    (2010); <u>see also</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991).  Because the California Court of

5    Appeal considered and denied petitioner's claim regarding the trial court's instruction, which

6    presents a purely legal issue, this court considers only whether that court's decision was contrary

7    to, or an unreasonable application of, clearly established federal law.

8         *Governing Authority*

9         Erroneous jury instructions do not support federal habeas relief unless the infirm

10    instruction so infected the entire trial that the resulting conviction violates due process.  <u>Estelle</u>

11    <u>v. McGuire</u>, 502 U.S. 62, 72 (1991) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)).  <u>See</u>

12    <u>also</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely

13    that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it

14    violated some [constitutional right]'").  The chalenged instruction may not be judged in artificial

15    isolation, but must be considered in the context of the instructions as a whole and the trial record

16    overall.  <u>Estelle</u>, 502 U.S. at 72.  Moreover, relief is only available if there is a reasonable

17    likelihood that the jury has applied the challenged instruction in a way that violates the

18    Constitution.  <u>Id.</u> at 72-73.  The Supreme Court has defined the category of infractions that

19    violate fundamental fairness very narrowly, and emphasized that the Due Process clause has

20    limited operation beyond the specific guarantees enumerated in the Bill of Rights.  <u>Id.</u>

21         It is an essential requirement of due process that the government must prove

22    beyond a reasonable doubt every fact necessary to constitute the charged offense.  <u>In re Winship</u>,

23

24        [2]    The Court of Appeal found that petitioner's argument is "mere semantics" and
"borders on the frivolous."  <u>Zepeda</u>, 167 Cal. App. 4th at 30.  The court additionally noted that
25    "[w]e publish our decision primarily to deter the defense bar from continuing to use defendant's
line of attack against CALCRIM No. 200, and we urge defense counsel to direct their resources
26    to arguably meritorious grounds of appeal."  <u>Id.</u> at 28.

1   397 U.S. 358, 364 (1970).   A "reasonable doubt" has often been described as one "based on

2   reason which arises from the evidence or a lack of evidence."  Jackson v. Virginia, 443 U.S. 307,

3   317 n.9 (1979).  The Supreme Court has "recognized this evidentiary standard as 'impress(ing)

4   on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'"

5   Johnson v. Louisiana, 406 U.S. 356, 361 (1972) (citing In re Winship, 397 U.S. 358, 364

6   (1970)).  See also Holland v. United States, 348 U.S. 121, 139-40 (1954) (collecting cases).

7   However, the Constitution requires only that the jury be instructed on the necessity that the

8   defendant's guilt be proved beyond a reasonable doubt; it does not requires that any particular

9   form of words be used in advising the jury of the government's burden of proof.  Jackson v.

10   Virginia, 443 U.S. 307, 320 n.14 (1979).  Taken as a whole, the instructions must correctly

11   convey the concept of reasonable doubt to the jury.  Victor v. Nebraska, 511 U.S. 1, 5 (1994).

12   The constitutional question is whether there is a reasonable likelihood that the jury understood

13   the instructions to allow conviction based upon proof insufficient to meet the Winship standard.

14   Victor, 511 U.S. at 5-6 ("[T]he proper inquiry is not whether the instruction 'could have' been

15   applied in an unconstitutional manner, but whether there was a reasonable likelihood that the

16   jury did so apply it.")

17            *Analysis*

18            Petitioner argues that the "abiding conviction" language with which his jury was

19   instructed was insufficient to convey the weight of the prosecution's burden of persuasion.  The

20   state court's disposition of the claim correctly followed Victor v. Nebraska, supra, which

21   approved language concerning an abiding conviction.   The Supreme Court specifically found

22   that an instruction "cast in terms of an abiding conviction as to guilt, without reference to moral

23   certainty, correctly states the government's burden of proof."  Victor, 511 U.S. at 14-15.

24   Especially because clearly established federal law holds that no specific form of instruction is

25   required, id. at 13, the state court's approval of CALCRIM No. 220 and rejection of petitioner's

26   theory cannot constitute an objectively unreasonable application of Victor.  Indeed, the Ninth

1   Circuit has repeatedly found no constitutional infirmity in the "abiding conviction" formulation

2   to which petitioner objects.  See, e.g., Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir.), cert.

3   denied, 528 U.S. 829 (1999).

4          Moreover, petitioner identifies no other portion of the instructions or of the trial

5   record which might have confused the jury or diluted the prosecution's burden.  To the contrary,

6   the instructions as a whole properly emphasized that the jury must consider multiple factors in

7   making individual factual findings; the trial judge did not reduce the deliberative process to a

8   simple quantitative weighing of evidence on a scale.  See, e.g., 3 RT 860:20-861:1 (evaluating a

9   "natural and probable consequence"); 3 RT 867:11-19 (evaluating provocation).  The jurors were

10   directed to consider specific factors in evaluating credibility, testimony, and conflicts in the

11   evidence.  See, e.g., 3 RT 854:5-18 (evaluating credibility of witness convicted of a felony);

12   855:6-12 (evaluating experts); 856:5-26 (defendant's right not to testify, and evaluation of his

13   out-of-court statements).  They were specifically instructed that conflicts in the evidence should

14   not be resolved based on a simple count of the number of witnesses, but rather on a consideration

15   of whether the specific evidence was convincing.  3 RT 853:14-24.  For these reasons, the

16   instructions as a whole fully satisfy Victor.

17          Considering all the instructions together, it is not reasonably likely that any juror

18   understood the instructions to allow conviction based on proof insufficient to meet the Winship

19   standard.  The instructions do not suggest an impermissible definition of reasonable doubt to the

20   jury, lower the prosecution's burden of proof, or increase the amount of doubt that the jury

21   required for an acquittal.  See, e.g., 3 RT 848:5-9; 3 RT 857:14-15; 3 RT 861:24-26; 3 RT

22   867:20-24 (repeating the "reasonable doubt" standard throughout the instructions).  The

23   undersigned accordingly concludes that the state Court of Appeal's decision was not contrary to,

24   or an unreasonable application of, clearly established federal law within the meaning of 28

25   U.S.C. § 2254(d).

26   ////

1              *Claim Two: Admission of Prejudicial Evidence*

2              Petitioner argues that introduction of rap lyrics he co-wrote violated his fair trial

3      and due process rights.  Petitioner's argument, in essence, is that the lyrics were irrelevant and

4      highly prejudicial.  ECF No. 1 at 11.

5                      There was no dispute in this case that petitioner was a Norteño,
                       that the Norteños are a violent street gang, and that their violence
6                      is often channeled against their rival, the Sureños.  Further, there
                       was little dispute based on the description of the shooting by the
7                      prosecutions [sic] own witness, that whoever had carried out the
                       shooting and [sic] had done so in a calculated manner consistent
8                      with premeditation.  The evidence of rap songs were irrelevant to
                       these relatively indusputed [sic] matters.  It did, however, add the
9                      repulsive and truculent language of rap songs to the weight of
                       character evidence highly prejudicing petitioner.

10

11     ECF No. 1 at 13.

12              Petitioner also argues that he was only one of the contributors to the lyrics, and

13     can only be responsible for the things he actually wrote.  ECF No. 22 at 13.  Petitioner does not

14     identify, either in his petition or his traverse, those portions of the quoted lyrics attributable only

15     to him.

16              The Court of Appeal found that (1) the evidence was probative of defendant's

17     state of mind and criminal intent, as well as of defendant's membership in a gang and his loyalty

18     to it; and (2) the evidence was not unduly prejudicial, instead providing noncumulative evidence

19     of defendant's state of mind and his gang association.  People v. Zepeda, 167 Cal. App. 4th at

20     35.  The Supreme Court denied review of this claim in a summary order.

21              *Governing Authority*

22              Because the last reasoned state court decision denied the claim on its merits, this

23     court considers only whether that court's decision was: (1) contrary to, or an unreasonable

24     application of, clearly established federal law, or (2) based on an unreasonable determination of

25     the facts.

26              The admission of evidence is generally a matter of state law, and habeas relief

                                          13

1   does not lie for errors of state law.  Estelle, 502 U.S. at 67; see also Jammal v. Van de Kamp,

2   926 F2d 918, 919-20 (9th Cir. 1991); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.

3   2009); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006).  A state trial court's admission

4   of evidence will form the basis for federal habeas relief only where the evidentiary ruling "so

5   fatally infected the proceedings as to render them fundamentally unfair" in violation of the

6   petitioner's due process rights.  See Jammal, 926 F.2d at 919; Kealohaupauole v. Shimoda, 800

7   F.2d 1463, 1465 (9th Cir. 1986) (whether or not the admission of evidence is contrary to a state

8   rule of evidence, a trial court's ruling does not violate due process unless the evidence is "of

9   such quality as necessarily prevents a fair trial.")  The U.S. Supreme Court has "defined the

10  category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United

11  States, 493 U.S. 342, 352 (1990); see also Spencer v. Texas, 385 U.S. 554, 563–564 (1967)

12  (rejecting argument that due process requires the exclusion of prejudicial evidence).

13          *Analysis*

14          In this case, the evidence at issue is two tracks from a gangster rap CD which are

15  credited to the petitioner.  The state Court of Appeal determined that the trial court did not abuse

16  its discretion in determining that the two tracks were admissible under state evidence rules, and

17  that the evidence's probative value was not substantially outweighed by its prejudicial impact.

18  Id. at 35.  In particular, the state court found that the evidence was probative of defendant's state

19  of mind and criminal intent, as well as his membership in and loyalty to a criminal street gang.

20  Id.

21          Petitioner's claim that the trial court violated his due process rights in admitting

22  the evidence is foreclosed by AEDPA because there is no clearly established Federal law "ruling

23  that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

24  sufficient to warrant issuance of the writ." Holley, 568 F.3d at 1101; see also Jammal, 926 F.2d

25  at 920 (due process not violated if jury may draw *any* permissible inference from evidence).

26  Even if the evidence was improperly admitted, petitioner cannot prevail in the absence of

14

1  Supreme Court authority finding a constitutional violation on analogous facts.  There is no such

2  authority.

3          Quite to the contrary, federal courts have repeatedly upheld the admission of

4  arguably prejudicial rap lyrics, recordings, and/or videos to prove criminal intent, gang

5  membership, and related matters.  See, e.g. United States v. Moore, 639 F.3d 443, 447-48 (8th

6  Cir. 2011) (recordings of defendant rapping about drugs were admissible and not unduly

7  prejudicial); United States v. Belfast, 611 F.3d 783, 820 (11th Cir. 2010) (rap lyrics admissible

8  to prove affiliation and knowledge of gang's history of violence), cert. denied, 132 S.Ct. 1511

9  (2011).  Even where violent rap lyrics or videos have been held inadmissible on appeal,

10  including on grounds their prejudicial impact outweighed their probative value, the errors

11  frequently have been deemed harmless.  See, e.g., Boyd v. City and County of San Francisco,

12  576 F.3d 938, 949-50 (9th Cir. 2009) (rap lyrics not authored by decedent erroneously admitted

13  to prove animosity toward police, but error was harmless); United States v. Gamory, 635 F.3d

14  480, 493-93 (11th Cir.) (admission of rap video was harmless error), cert. denied, 132 S.Ct. 826

15  (2011).[3]  These cases are fully consistent with the line of California authority on which the state

16  court relied in petitioner's case.  See People v. Olguin, 31 Cal. App. 4th 1355, 1372-73 (1994)

17  (rap lyrics written by defendant admissible to demonstrate gang membership and motive).  While

18  there may be room for debate among reasonable judges about the propriety of such evidence in

19  any given case, habeas relief is available only where there is no room for such debate.  See

20  Richter, 131 S.Ct. at 786 (habeas relief unavailable where fairminded jurists could disagree).

21  For all these reasons, the state court's adjudication of the claim is not contrary to or an

22  unreasonable application of federal law.

23          To the extent that the state court based its decision on findings of fact, those

24

25  _____

        [3]   The cases cited in this paragraph were decided under the Federal Rules of Evidence,
      not under due process standards – let alone the stringent deference standards that apply in federal
      habeas.  The fact that the appellants lost under a more favorable standard of review demonstrates

26      that petitioner cannot prevail under the more demanding standards applicable to his claim.

1   findings are also reasonable.  Specifically, on the issue of probative value, the court of appeal

2   found as follows:

3   > The songs showed that defendant's gang had the motive and intent
> to kill Sureños . . . .  Defendant's communications here were not

4   > ambiguous or equivocal.  These lyrics, coupled with the other
> evidence of defendant's gang membership and his animosity

5   > towards Sureños, go beyond mere fiction to disclosing defendant's
> state of mind, his motives and intentions, and his fealty to

6   > furthering his criminal gang's activities.

7   Zepeda, 167 Cal. App. 4th at 35.

8   In relation to prejudice, the court found as follows:

9   > Only two of the six tracks credited to defendant were played to the
> jury. The tracks provided noncumulative evidence of defendant's

10  > state of mind and his gang association, differing in context from
> his tattoos, drawings, notebooks, and pictures of himself flashing

11  > gang signs. The language and substance of the lyrics, although
> graphic, did not rise to the level of evoking an emotional bias

12  > against defendant as an individual apart from what the facts
> proved.

13

14  Id.

15   None of the above statements of fact are patently inaccurate, unsupported by the

16  record, or otherwise objectively unreasonable.  The lyrics are replete with references to Norteños

17  killing "scraps," and at trial a law enforcement gang expert testified that Norteños refer to

18  Sureños as "scraps."  Id. at 32 & n.5.  Accordingly, the appellate court's characterization of the

19  lyrics' contents and implications is entirely reasonable.  The appellate court was also reasonable

20  in noting that the various types of evidence of gang affiliation were not merely cumulative, as

21  they differed in kind.  The appellate court's characterization of the trial record is accurate.

22   For all the reasons set forth above, neither subsection of § 2254(d) provides a

23  basis for relief.

24  **CERTIFICATE OF APPEALABILITY**

25   Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this

26  court must issue or deny a certificate of appealability when it enters a final order adverse to the

16

applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      The petition for writ of habeas corpus be denied; and

2.      The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 1, 2013.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb
zepe1757.fr

17