IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANTOS ZEPEDA,

       Petitioner,                No. 2:11-cv-1757 KJM AC P

    vs.

SUZAN L. HUBBARD,

       Respondent.          FINDINGS & RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se and in forma pauperis on his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the undersigned recommends that the petition be DENIED and that a certificate of appealability not issue.

**BACKGROUND**

       On April 27, 2004, petitioner, a member of the Norteño street gang, shot Robert Gonzalez, Sr. ("Robert, Sr."), who associated with the rival Sureño gang, and Robert, Sr.'s son, Robert Gonzalez, Jr. ("Robert, Jr."). Lod. Doc. No. 1 at 2. Robert, Jr. died of his wounds, and Robert, Sr. was paralyzed from the waist down. See People v. Zepeda, 167 Cal. App. 4th 25, 28 (2008).

1

On October 10, 2006, petitioner was convicted by jury of: (1) one count of murder, in violation of Penal Code § 187; (2) one count of attempted murder, in violation of Penal Code §§ 664 and 187; and (3) two counts of assault with a semiautomatic firearm, in violation of Penal Code § 245(b). The jury also found true special allegations of: (1) personal use of a firearm, for all counts; (2) personal intentional discharge of a firearm causing death or great bodily injury, on the murder and attempted murder counts; (3) participation in a criminal street gang, on the assault counts; and (4) infliction of paralysis, on the attempted murder and one of the assault counts. ECF No. 1 at 1; RT 977:19-983:18. On December 27, 2006, petitioner was sentenced to a determinate term of 9 years, plus indeterminate terms totaling 75 years to life. RT 1014:10-1018:20.

During trial, the trial court allowed the prosecution to introduce evidence of petitioner's association with the Norteño gang, including a CD called "Smebbin' Through the Town." Lod. Doc. No. 1 at 6-7; 2 RT 531:11-536:21. The prosecution's gang expert identified petitioner as the co-writer or co-producer for six of the twelve tracks on the CD. 2 RT 532:22-533:10. The prosecution, over defense counsel's objection, played two of the songs for the jury. 2 RT 534:7-535:26.

The transcriptions of the lyrics do not appear in this court's version of the record, as the playback was not transcribed by the court reporter. 2 RT 535:25-26. The state Court of Appeals, however, included the transcriptions in its opinion:

> The lyrics to the first track, track 2, were transcribed as follows: "(inaudible) Santos (inaudible) Representin not pretending with the 530. I carry a gat, smoke a sack, of the (inaudible.) I put Chico on the map, Fuck a bitch ass scrap (inaudible). Throw up the one four. Everyday we play this gangster role, kill a scrap we throw into a ditch. Fuck (inaudible) tricks while I talk to my click that's some serious shit. This is Chico Cali so sick with the sickness, semiautomatic sums up with quickness, so quiz this mother fucker, tuck it down. Better watch your back cause fuckin driven in town. Caught a scrap that was slippin, grab my glock (inaudible) not given a fuck. If your fuckin with me I straight fuck you myself (inaudible) Politics and gangster shit, Chevrolet, our philosophy fuckin' here we go, smoken on a pound, players from Chico,

2

smebbin through the town, politics and gangster shit, Chevrolet, our philosophy mother fuckers here we go, smokin' on a pound, players from Chico, smebbin through the town.

Portions of the second track, track 6, were transcribed as follows: "Player I be comin' through when I'm lookin' way too fresh, and I got a glock stuck in pants mother fucker so don't test. You know nothin' about these gangsters representin' Chico, we be mobbing through your town throwin' up the one four.... [¶] We play every day all day bitch in the struggle to get paid, and with no hesitation pullin' out the .12 gauge, I'm coming way too sick man, it sounds like I've been blessed, and when I'm on the block I look my best, I look too fresh, I'm a straight-up hustlin' pimp, mother fucker can't you see, what you got one fine-ass bitch trick, I've got like two or three, so you mother fuckers want to kill (inaudible) guard your house and load the gate mother fucker I'm about to retaliate, creepin' up in your window, puttin' a slug into your face, slippin' and sliding outta the scene so bad I don't catch a case, (inaudible) from almighty Chico, oh you know we don't have a play, when I realize hangin' ain't gonna happen just doing our gangster thing, I'm a hoggin' doggin' player bitch and I been that way so long, just take a hit of the dojo weed as you're listenin' to this song, take a 40 (inaudible) hit that shit until it's gone. [¶] ... [¶] (Inaudible) blunts and broken jugs (inaudible) lift it on my homie's back and (inaudible) Northside rider 'til I die, throwin' fists while (inaudible) tryin' hard to stay alive, well we survive this shit through the streets of Chico Cali, this Mr. Ish, with a bit of sickness, Northern Cali's where I be with my homies next to me, ready to ride and ready to see ready to make these scrapas bleed hit the spot and make it crack, with a fifth of the cognac, 530 and we go blow, with my .44 I'll let 'em know, it's northern Cali we'll (inaudible) so we come up. Rollin' hard I give a fuck, I'm runnin' up flamed up, 'cause I'm feeling luck, it ain't no game and my homies bring pain through the thunder and the rain, don't blame me I be outta the double V like a G I stay high, northside is how I ride and that's how it's gonna be, this is VCN write it N–O–R–T–E. [¶] ... [¶] Chico Chapmantown (Inaudible) hosin' up off the strip, we (inaudible) and damn sure we (inaudible) Norteños collide we ride, pullin' the homicide, we be comin' through your town, like we livin' so fresh, you old bitch ass scrap better shove up your vest, (inaudible) puttin' to rest, lookin' at my barrel with your very last breath and that it was kept, a 40 and a blunt with a Hennessy fifth, mobbing through the town, pullin' that gangster shit puttin' it down for that Norte click they say only the strong survive but that's only just a lie, the biggest mother fucker caught steel between his eyes, now he's lying dead, checked out, no (inaudible) nine millimeter (inaudible) when I creep and you know is sayin' straight runnin' the gang who is the black (inaudible) the scrap's name still runnin' the same."

People v. Zepeda, 167 Cal. App. 4th at 33-34 (footnotes omitted).

Without objection, the trial court instructed the jury on reasonable doubt using CALCRIM No. 220:

> A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.
>
> Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

3 RT 793:23-794:5; 829:14-830:26; 845:7-23.

On September 25, 2008, the Third District Court of Appeal affirmed the conviction and sentence in a published opinion. See People v. Zepeda, 167 Cal. App. 4th 25 (2008), ECF No. 18-1. Petitioner then sought review in the state Supreme Court, which was denied on December 17, 2008. Lod. Doc. 4.

Petitioner filed the instant federal petition on June 30, 2011. ECF No. 1. Respondent filed her answer on December 29, 2013. ECF No. 18. Petitioner filed his traverse on February 23, 2012. ECF No. 22.

**CLAIMS FOR RELIEF**

Petition seeks relief on the following grounds:

(1) The trial court violated petitioner's due process rights under the Fourteenth Amendment when it instructed the jury on "reasonable doubt" using CALCRIM No. 220, because this instruction "fails to convey a subjective certitude of the truth of the charge"; and

4

(2) The trial court violated petitioner's due process rights under the Fourteenth Amendment when it allowed the prosecution to play a CD "containing irrelevant and highly prejudicial gangster rap lyrics composed in part by petitioner." Doc. No. 1 at 7, 9.

**PRELIMINARY ISSUES**

<u>*Timeliness*</u>

In her answer, respondent affirmatively alleges that the current petition is untimely. ECF No. 18 at 2. The court had previously issued findings and recommendations that the petition be dismissed as untimely (ECF No. 7), which the court then vacated in response to the petitioner's objections articulating an equitable tolling defense to the statute of limitations (ECF Nos. 8, 9).

In her answer, respondent asks that the court address the merits of the case before reaching the timeliness issue. <u>See</u> ECF No. 18 at 2, n.2. Petitioner does not object to the court ruling on the merits of his petition before deciding the timeliness issue; however, if the court should decide to determine timeliness, petitioner asks that the court address this issue first, order an evidentiary hearing, and appoint counsel. <u>See</u> ECF No. 22 at 2.

The one-year statute of limitations for federal habeas petitions is not jurisdictional, and is subject to equitable tolling. <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. <u>Id.</u> (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). In <u>Holland</u>, for example, the Supreme Court noted that an attorney's failures to file a timely federal petition, to inform Mr. Holland about the "crucial fact" that the state court had decided his appeal, or to communicate with Mr. Holland over a period of years despite Mr. Holland's repeated pleas for a response, "seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review. . . ." 130 S.Ct. at 2564-65.

5

District courts retain the discretion to determine a petition on its merits, bypassing an asserted procedural defense, where the underlying claims are "clearly not meritorious." See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); see also Day v. McDonough, 547 U.S. 198, 208-09 (2006) (district courts can exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition); Granberry v. Greer, 481 U.S. 129, 135 (1987) (discussing ability of district court to bypass exhaustion determination where the petitioner does not raise a colorable federal claim).

Adjudication of timeliness in this case would require fact finding regarding petitioner's diligence and the alleged misconduct of his former counsel. Because the claims are without merit for the reasons explained below, the court should exercise its discretion to bypass the timeliness question and rule on the merits of the petition.

*Exhaustion*

In her answer, respondent alleges that petitioner must prove exhaustion. A review of the decision of the Court of Appeal, as well as the petition for review filed with the California Supreme Court, reflects that petitioner raised with those courts the two issues which are the subject of this petition. Petitioner has accordingly exhausted his claims as required by 28 U.S.C. § 2254(b)(1).[1]

**MERITS**

*Standards Governing The Availability of Habeas Relief*

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be

---

[1] Even where claims are unexhausted, the court may deny a petition on the merits. 28 U.S.C. § 2254(b)(2). Because petitioner's claims lack merit, the court would proceed directly to the merits even if there were a question regarding exhaustion.

6

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." (Terry) Williams v. Taylor, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value

7

regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. Davis v. Woodford, 333 F.3d 982, 990 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. Williams, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available). A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at 405. A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. See Richter, 131 S. Ct. at 786. Evidence presented for the first time in federal court is not pertinent to the § 2254(d)(1) analysis. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id.

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. § 2254(d)(2); Miller-El v. Dretke, 545 U.S. 231, 240 (2005). This inquiry is limited to the evidencethat was before the state court. Id. An unreasonable determination of facts exists where, among other

8

circumstances, the state court made its findings according to a flawed process -- for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it.  See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  A state court factual conclusion can also be unreasonable where it is not fairly supported by the evidence presented in the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); Bradley v. Duncan, 315 F.3d 1091, 1096-98 (9th Cir. 2002)  (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), cert. denied, 540 U.S. 963 (2003).

*Claim One: Jury Instructions*

Petitioner argues that the trial court's instruction on reasonable doubt violated his Fourteenth Amendment due process rights because the given instruction "fails to convey a subjective certitude of the truth of the charge."  ECF No. 1 at 7.  Petitioner claims that the instruction "obscures the requirement that proof beyond a reasonable doubt involves not merely an objective assessment of the probabilities inherent in the evidence but a 'subjective certitude' of the truth of the charge. . . ."  Id. at 8.

The California Court of Appeal considered petitioner's claim that CALCRIM No. 220 violated the Fourteenth Amendment, and found that the trial court made no error in giving this instruction:

> CALCRIM No. 220 conveys to the jury the concept of reasonable doubt without being ambiguous or obscuring the concept's scope. It defines proof beyond a reasonable doubt as proof that leaves the juror with an abiding conviction, a description that legally and linguistically means a deeply felt conviction.  By referencing an "abiding conviction," the instruction "correctly states the government's burden of proof."  (*Victor v. Nebraska*, *supra*, 511 U.S. [1], at pp. 14-15. . . .)  The constitution requires nothing more.

9

Zepeda, 167 Cal. App. 4th at 31-32, ECF No. 18-1 at 8.[2]

This court's review under 28 U.S.C. § 2254(d) focuses on the last reasoned state court decision. Collins v. Runnels, 603 F.3d 1127, 1130 (9th Cir.), cert. denied, 131 S.Ct. 243 (2010); see also Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). Because the California Court of Appeal considered and denied petitioner's claim regarding the trial court's instruction, which presents a purely legal issue, this court considers only whether that court's decision was contrary to, or an unreasonable application of, clearly established federal law.

*Governing Authority*

Erroneous jury instructions do not support federal habeas relief unless the infirm instruction so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)). See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]'"). The chalenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record overall. Estelle, 502 U.S. at 72. Moreover, relief is only available if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 72-73. The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, and emphasized that the Due Process clause has limited operation beyond the specific guarantees enumerated in the Bill of Rights. Id.

It is an essential requirement of due process that the government must prove beyond a reasonable doubt every fact necessary to constitute the charged offense. In re Winship,

---

[2] The Court of Appeal found that petitioner's argument is "mere semantics" and "borders on the frivolous." Zepeda, 167 Cal. App. 4th at 30. The court additionally noted that "[w]e publish our decision primarily to deter the defense bar from continuing to use defendant's line of attack against CALCRIM No. 200, and we urge defense counsel to direct their resources to arguably meritorious grounds of appeal." Id. at 28.

10

1  397 U.S. 358, 364 (1970).  A "reasonable doubt" has often been described as one "based on
2  reason which arises from the evidence or a lack of evidence."  Jackson v. Virginia, 443 U.S. 307,
3  317 n.9 (1979).  The Supreme Court has "recognized this evidentiary standard as 'impress(ing)
4  on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'"
5  Johnson v. Louisiana, 406 U.S. 356, 361 (1972) (citing In re Winship, 397 U.S. 358, 364
6  (1970)).  See also Holland v. United States, 348 U.S. 121, 139-40 (1954) (collecting cases).
7  However, the Constitution requires only that the jury be instructed on the necessity that the
8  defendant's guilt be proved beyond a reasonable doubt; it does not requires that any particular
9  form of words be used in advising the jury of the government's burden of proof.  Jackson v.
10 Virginia, 443 U.S. 307, 320 n.14 (1979).  Taken as a whole, the instructions must correctly
11 convey the concept of reasonable doubt to the jury.  Victor v. Nebraska, 511 U.S. 1, 5 (1994).
12 The constitutional question is whether there is a reasonable likelihood that the jury understood
13 the instructions to allow conviction based upon proof insufficient to meet the Winship standard.
14 Victor, 511 U.S. at 5-6 ("[T]he proper inquiry is not whether the instruction 'could have' been
15 applied in an unconstitutional manner, but whether there was a reasonable likelihood that the
16 jury *did* so apply it.")

*Analysis*

18  Petitioner argues that the "abiding conviction" language with which his jury was
19 instructed was insufficient to convey the weight of the prosecution's burden of persuasion.  The
20 state court's disposition of the claim correctly followed Victor v. Nebraska, supra, which
21 approved language concerning an abiding conviction.  The Supreme Court specifically found
22 that an instruction "cast in terms of an abiding conviction as to guilt, without reference to moral
23 certainty, correctly states the government's burden of proof."  Victor, 511 U.S. at 14-15.
24 Especially because clearly established federal law holds that no specific form of instruction is
25 required, id. at 13, the state court's approval of CALCRIM No. 220 and rejection of petitioner's
26 theory cannot constitute an objectively unreasonable application of Victor.  Indeed, the Ninth

Circuit has repeatedly found no constitutional infirmity in the "abiding conviction" formulation to which petitioner objects. See, e.g., Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir.), cert. denied, 528 U.S. 829 (1999).

Moreover, petitioner identifies no other portion of the instructions or of the trial record which might have confused the jury or diluted the prosecution's burden. To the contrary, the instructions as a whole properly emphasized that the jury must consider multiple factors in making individual factual findings; the trial judge did not reduce the deliberative process to a simple quantitative weighing of evidence on a scale. See, e.g., 3 RT 860:20-861:1 (evaluating a "natural and probable consequence"); 3 RT 867:11-19 (evaluating provocation). The jurors were directed to consider specific factors in evaluating credibility, testimony, and conflicts in the evidence. See, e.g., 3 RT 854:5-18 (evaluating credibility of witness convicted of a felony); 855:6-12 (evaluating experts); 856:5-26 (defendant's right not to testify, and evaluation of his out-of-court statements). They were specifically instructed that conflicts in the evidence should not be resolved based on a simple count of the number of witnesses, but rather on a consideration of whether the specific evidence was convincing. 3 RT 853:14-24. For these reasons, the instructions as a whole fully satisfy Victor.

Considering all the instructions together, it is not reasonably likely that any juror understood the instructions to allow conviction based on proof insufficient to meet the Winship standard. The instructions do not suggest an impermissible definition of reasonable doubt to the jury, lower the prosecution's burden of proof, or increase the amount of doubt that the jury required for an acquittal. See, e.g., 3 RT 848:5-9; 3 RT 857:14-15; 3 RT 861:24-26; 3 RT 867:20-24 (repeating the "reasonable doubt" standard throughout the instructions). The undersigned accordingly concludes that the state Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

////

*Claim Two: Admission of Prejudicial Evidence*

Petitioner argues that introduction of rap lyrics he co-wrote violated his fair trial and due process rights. Petitioner's argument, in essence, is that the lyrics were irrelevant and highly prejudicial. ECF No. 1 at 11.

> There was no dispute in this case that petitioner was a Norteño, that the Norteños are a violent street gang, and that their violence is often channeled against their rival, the Sureños. Further, there was little dispute based on the description of the shooting by the prosecutions [sic] own witness, that whoever had carried out the shooting and [sic] had done so in a calculated manner consistent with premeditation. The evidence of rap songs were irrelevant to these relatively indusputed [sic] matters. It did, however, add the repulsive and truculent language of rap songs to the weight of character evidence highly prejudicing petitioner.

ECF No. 1 at 13.

Petitioner also argues that he was only one of the contributors to the lyrics, and can only be responsible for the things he actually wrote. ECF No. 22 at 13. Petitioner does not identify, either in his petition or his traverse, those portions of the quoted lyrics attributable only to him.

The Court of Appeal found that (1) the evidence was probative of defendant's state of mind and criminal intent, as well as of defendant's membership in a gang and his loyalty to it; and (2) the evidence was not unduly prejudicial, instead providing noncumulative evidence of defendant's state of mind and his gang association. People v. Zepeda, 167 Cal. App. 4th at 35. The Supreme Court denied review of this claim in a summary order.

*Governing Authority*

Because the last reasoned state court decision denied the claim on its merits, this court considers only whether that court's decision was: (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts.

The admission of evidence is generally a matter of state law, and habeas relief

13

does not lie for errors of state law. Estelle, 502 U.S. at 67; see also Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006). A state trial court's admission of evidence will form the basis for federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to render them fundamentally unfair" in violation of the petitioner's due process rights. See Jammal, 926 F.2d at 919; Kealohaupauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986) (whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is "of such quality as necessarily prevents a fair trial.") The U.S. Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990); see also Spencer v. Texas, 385 U.S. 554, 563–564 (1967) (rejecting argument that due process requires the exclusion of prejudicial evidence).

*Analysis*

In this case, the evidence at issue is two tracks from a gangster rap CD which are credited to the petitioner. The state Court of Appeal determined that the trial court did not abuse its discretion in determining that the two tracks were admissible under state evidence rules, and that the evidence's probative value was not substantially outweighed by its prejudicial impact. Id. at 35. In particular, the state court found that the evidence was probative of defendant's state of mind and criminal intent, as well as his membership in and loyalty to a criminal street gang. Id.

Petitioner's claim that the trial court violated his due process rights in admitting the evidence is foreclosed by AEDPA because there is no clearly established Federal law "ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley, 568 F.3d at 1101; see also Jammal, 926 F.2d at 920 (due process not violated if jury may draw *any* permissible inference from evidence). Even if the evidence was improperly admitted, petitioner cannot prevail in the absence of

14

Supreme Court authority finding a constitutional violation on analogous facts. There is no such authority.

Quite to the contrary, federal courts have repeatedly upheld the admission of arguably prejudicial rap lyrics, recordings, and/or videos to prove criminal intent, gang membership, and related matters. See, e.g. United States v. Moore, 639 F.3d 443, 447-48 (8th Cir. 2011) (recordings of defendant rapping about drugs were admissible and not unduly prejudicial); United States v. Belfast, 611 F.3d 783, 820 (11th Cir. 2010) (rap lyrics admissible to prove affiliation and knowledge of gang's history of violence), cert. denied, 132 S.Ct. 1511 (2011). Even where violent rap lyrics or videos have been held inadmissible on appeal, including on grounds their prejudicial impact outweighed their probative value, the errors frequently have been deemed harmless. See, e.g., Boyd v. City and County of San Francisco, 576 F.3d 938, 949-50 (9th Cir. 2009) (rap lyrics not authored by decedent erroneously admitted to prove animosity toward police, but error was harmless); United States v. Gamory, 635 F.3d 480, 493-93 (11th Cir.) (admission of rap video was harmless error), cert. denied, 132 S.Ct. 826 (2011).[3] These cases are fully consistent with the line of California authority on which the state court relied in petitioner's case. See People v. Olguin, 31 Cal. App. 4th 1355, 1372-73 (1994) (rap lyrics written by defendant admissible to demonstrate gang membership and motive). While there may be room for debate among reasonable judges about the propriety of such evidence in any given case, habeas relief is available only where there is no room for such debate. See Richter, 131 S.Ct. at 786 (habeas relief unavailable where fairminded jurists could disagree). For all these reasons, the state court's adjudication of the claim is not contrary to or an unreasonable application of federal law.

To the extent that the state court based its decision on findings of fact, those

---

[3] The cases cited in this paragraph were decided under the Federal Rules of Evidence, not under due process standards – let alone the stringent deference standards that apply in federal habeas. The fact that the appellants lost under a more favorable standard of review demonstrates that petitioner cannot prevail under the more demanding standards applicable to his claim.

15

findings are also reasonable.  Specifically, on the issue of probative value, the court of appeal found as follows:

> The songs showed that defendant's gang had the motive and intent to kill Sureños . . . .  Defendant's communications here were not ambiguous or equivocal.  These lyrics, coupled with the other evidence of defendant's gang membership and his animosity towards Sureños, go beyond mere fiction to disclosing defendant's state of mind, his motives and intentions, and his fealty to furthering his criminal gang's activities.

Zepeda, 167 Cal. App. 4th at 35.

In relation to prejudice, the court found as follows:

> Only two of the six tracks credited to defendant were played to the jury. The tracks provided noncumulative evidence of defendant's state of mind and his gang association, differing in context from his tattoos, drawings, notebooks, and pictures of himself flashing gang signs. The language and substance of the lyrics, although graphic, did not rise to the level of evoking an emotional bias against defendant as an individual apart from what the facts proved.

Id.

None of the above statements of fact are patently inaccurate, unsupported by the record, or otherwise objectively unreasonable.  The lyrics are replete with references to Norteños killing "scraps," and at trial a law enforcement gang expert testified that Norteños refer to Sureños as "scraps."  Id. at 32 & n.5.  Accordingly, the appellate court's characterization of the lyrics' contents and implications is entirely reasonable.  The appellate court was also reasonable in noting that the various types of evidence of gang affiliation were not merely cumulative, as they differed in kind.  The appellate court's characterization of the trial record is accurate.

For all the reasons set forth above, neither subsection of § 2254(d) provides a basis for relief.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the

16

applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 1, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb
zepe1757.fr